ASSOCIATED CLAIMS SERVICE, INC., Plaintiff-Appellant, *v.* RINELLA AND RINELLA, Defendant-Appellee.

First District (2nd Division)   No. 78-1954

Opinion filed December 31, 1979.

Eileen Colman and Mel Cahan, both of Chicago (Lurie & Cahan, Ltd., of counsel), for appellant.

Rinella and Rinella, of Chicago (David B. Carlson and Catherine A. Higgins, of counsel), for appellee, *pro se*.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Associated Claims Service, Inc. (hereinafter Associated), brought an action alleging that Rinella and Rinella, a law firm (hereinafter Rinella) employed it to perform services for which it had not been paid. The trial court entered judgment for Rinella from which Associated appeals. We affirm for the reasons assigned below.

On May 9, 1977, Associated filed a complaint against Rinella alleging that it had failed to pay for services that Associated was employed to perform for it, seeking damages of $677.35 plus costs. Rinella entered a general appearance on May 9, 1977, and on June 1, 1977, filed a motion to join Joan Wrigley, and a Wisconsin law firm, Graves, Greenwald, Maier & Miner (hereinafter Graves) as additional defendants to this action. The affidavit in support of this motion stated that the affiant, Samuel A. Rinella, was a member of Rinella and Rinella; that the firm had represented Joan Wrigley in an Illinois marital dissolution action instituted by her; that the firm together with the Graves firm represented her in a Wisconsin marital dissolution action instituted by her husband; that any transaction undertaken by Rinella with Associated was as agent of Joan Wrigley upon whom primary liability for payment of plaintiff's

services rests; and that Graves may be liable to Associated, solely or jointly, with Rinella.

On July 20, 1977, an order was entered authorizing joinder of Joan Wrigley and Graves as additional defendants. This order was subsequently vacated on August 12, 1977, pursuant to Associated's motion. On April 12, 1978, with leave of court, Rinella filed a third-party complaint for indemnity against Joan Wrigley and Graves, alleging that it hired Associated to perform the services but that any indebtedness for such services lies with Joan Wrigley because Rinella acted only as her agent, or, alternatively, that Rinella hired Associated but that any indebtedness for the services lies jointly with it and Graves.

A bench trial was conducted on August 7, 1978. After Associated presented its evidence, the trial court granted Rinella's motion for judgment, finding that Associated had failed to present a *prima facie* case that it was hired by the Rinella firm. Rinella then voluntarily dismissed its third-party action against Joan Wrigley and Graves.

Two material witnesses appeared for Associated at the trial. William B. Miller testified that he is presently employed by Associated and was so employed in July and August of 1976. On August 19, 1976, the office of Associated received a telephone call concerning subpoenas relating to the Wrigley file. Miller went to Rinella's office that day and a woman behind a receiving desk handed him about a dozen subpoenas. When he asked her for the witness fee checks, she told him that there was no one in the office to sign them. He told her that a Mr. Tasch was the only person from Associated authorized to sign such checks, who would not be available until the following day. She responded that such an arrangement would be agreeable. The subpoenas were served within a week thereafter.

On cross-examination, Miller testified that Associated's office receptionist received a telephone call on August 19 and asked him if he was familiar with the Wrigley case in which Rinella was involved. He told her that he was and took the call. The caller identified herself as a Mr. Litwin's secretary, then asked if anybody in Associated's office could serve subpoenas in the Wrigley case. He went to the Rinella office and picked up about a dozen subpoenas for the Illinois Wrigley case and personally served three of them. He received no written correspondence from Litwin, had never spoken with him, but believed him to have been a member of the Rinella firm because of the conversation he had with the woman who identified herself as his secretary.

John S. Tasch testified that he is an attorney and is the president and sole owner of Associated. On July 16, 1976, he was initially contacted in connection with the Wrigley suit by John P. Graves of the Wisconsin law firm. In this conversation, Tasch was informed that two actions had been

filed entitled "Wrigley v. Wrigley," one in Illinois and one in Wisconsin. Graves requested that deposition subpoenas be served by Associated to witnesses in Chicago in connection with the Wisconsin suit. These subpoenas were served and Associated was thereafter paid for this service, but did not indicate by whom. On August 24, 1976, he telephoned Litwin, who told him he was in the Rinella firm. When Tasch explained there were some difficulties in serving the subpoenas, Litwin said to continue the attempt to serve them. Tasch stated that on October 7, 1976, he received a telephone call from a woman who identified herself as Litwin's secretary and asked if the subpoenas in the Wrigley case had been served yet.

On cross-examination, Tasch testified that he did not have any conversation with Samuel Rinella regarding the Wrigley case; that he did have a conversation with Litwin whom he had called on the telephone, apparently calling the Rinella office; and that he did not know what Litwin's capacity was with the firm.

■■ On appeal, Associated argues that it established a *prima facie* case that Rinella hired it to perform the services, and that therefore Rinella is required to compensate Associated for those services on two alternate bases: apparent authority and judicial admission. Addressing the apparent authority issue, Associated contends that Litwin and Rinella's receptionist had the apparent authority to hire it, citing *Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 364 N.E.2d 952, and *Winston v. Sears, Roebuck & Co.* (1967), 88 Ill. App. 2d 358, 233 N.E.2d 95. We need not reach this conclusion because of a judicial admission by Rinella in its third-party complaint which conclusively settles this point.

Paragraphs 2, 3 and 5 of the third-party complaint provide in pertinent part:

"2. That defendant and third party plaintiff and the said firm of GRAVES, GREENWALD, MAIER & MINER at various times and places and at the express request of JOAN WRIGLEY engaged the services of the plaintiff in connection with one or another of said causes.

3. That defendant and third party plaintiff in fact only engaged and transacted with plaintiff as agent for JOAN WRIGLEY, third party defendant, and that the primary liability, if any exists, for the payment of plaintiff's bill for services rendered rests with the said JOAN WRIGLEY.

       ❊   ❊   ❊

5. That because of the actions of third party defendants, JOAN WRIGLEY and GRAVES, GREENWALD, MAIER & MINER, in engaging and cooperating with defendant, RINELLA and RINELLA, in the engaging and directing of the services of the

plaintiff in this matter, it is impossible to obtain a full and final determination of this cause without the naming of GRAVES, GREENWALD, MAIER & MINER and JOAN WRIGLEY as third party defendants to this action."

From the foregoing, we agree with Associated that Rinella judicially admitted it employed Associated to perform the services in question. (*Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 50-51, 183 N.E.2d 547; *Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621.) The judicial admission here is similar to that made in *Koenig v. 399 Corp.* (1968), 97 Ill. App. 2d 345, 240 N.E.2d 164. There Koenig sued 399 Corporation, alleging she had been injured by the negligent operation of its elevator. Defendant filed a third-party complaint alleging that the third-party defendant was responsible for the dangerous and defective condition of the elevator, as a result of which Koenig was injured. The appellate court held the third-party complaint admitted that the proximate cause of plaintiff's injuries was the dangerous condition of the elevator. At bar, Rinella unqualifiedly admitted hiring Associated, only stating its potential indebtedness for these services in contingency terms. Therefore, it has been conclusively established that Associated was hired by Rinella to perform the services. Notwithstanding this conclusion, we affirm for other reasons appearing in the record. See, *e.g., Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664.

■ Associated urges once it is shown that Rinella hired it to perform these services, Rinella is obligated to pay for them. With this contention we do not agree. The facts clearly indicate that Rinella employed Associated only while acting as agent for its disclosed principal, Joan Wrigley, and Associated knew of this relationship both from the previous Wisconsin action and the pending Illinois action, as shown by the evidence. An agent making a contract who discloses his agency and the name of his principal is not liable on the contract nor is he liable when the party dealing with him knows that he is acting as an agent, unless, in either event, he agrees to become personally liable. (*Petrando v. Barry* (1955), 4 Ill. App. 2d 319, 124 N.E.2d 85.) In *Petrando*, plaintiff printed appellate briefs pursuant to defendant's request. Plaintiff knew that defendant was an attorney and that the briefs were ordered by him in connection with his representation of his client. Plaintiff brought an action against defendant for the cost of the briefs, which resulted in a judgment for plaintiff. The appellate court, in reversing this judgment, held that (4 Ill. App. 2d 319, 322):

"'* * * the relation of the attorney to his client, in some of its aspects, is a relation of agency, and is, in general, governed by the same rules which apply to other agencies * * *.'

'So the attorney is not liable ordinarily to third persons upon the contracts which he makes for his client, where his agency is disclosed, and the attorney does not pledge his personal responsibility ° ° °.' " (Quoting Mechem, Outlines of the Law of Agency §§612, 622 (3d ed. 1923).)

This rule was subsequently adhered to in *McCorkle v. Weinstein* (1977), 50 Ill. App. 3d 661, 365 N.E.2d 953, in which court reporter services were secured by an attorney for his client whose identity was disclosed to the court reporter, and in *International Service Corp. v. Ooms* (1969), 105 Ill. App. 2d 391, 245 N.E.2d 571, in which plaintiff, which specialized in patent and trademark investigations, was held to have no cause of action against the employing attorney, because it knew that the work was being performed for the attorney's client.

■■ At bar, although it is clear that Rinella employed Associated, it is equally clear that Associated was aware of that firm's representative capacity. Nothing in the evidence demonstrated that a personal pledge had been made by Rinella or one of its agents to pay for these services; rather, the testimony at best indicated that Rinella, through its agents, had requested the performance of the services on behalf of its client. The reasoning of *Petrando, McCorkle* and *Ooms* is applicable, and the trial court properly entered judgment for Rinella.

For the reasons hereinabove set forth, the judgment of the circuit court must be affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.